UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL PRUDE d/b/a JACQUELINE'S
DISTRIBUTORS,                                          Case No. 07-13472

    Plaintiff,                                        Honorable Nancy G. Edmunds

v.

McBRIDE RESEARCH LABORATORIES,
INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [5]**

This matter comes before the Court on Defendant McBride Research Laboratories, Inc. ("McBride")'s motion for summary judgment alternatively arguing that (1) Plaintiff's Distributor Agreement is not a "franchise" that entitles Plaintiff to rights under Michigan's Franchise Investment Law, Mich. Comp. Laws § 445.1501, *et seq.*; or (2) the parties' broad contractual agreement to arbitrate in Georgia any disputes arising out of or relating to the Distributor Agreement requires dismissal of Plaintiff's claims.[1] For the reasons stated more fully below, the Court agrees with Defendant's second argument. Accordingly, Defendant's motion is GRANTED IN PART.

---

[1] Plaintiff's complaint, originally filed in Wayne County Circuit Court, alleges that Defendant violated Michigan's Franchise Investment Law in connection with the termination of Plaintiff's Distributor Agreement (Count I) and breached the Distributor Agreement (Count II). Defendant subsequently removed the action to this Court on diversity of citizenship grounds.

I. **Facts**

   A. **Distributor Agreement**

Beginning in 1998, Plaintiff entered into a series of yearly Distributor Agreements with McBride, a Georgia manufacturer of professional hair care products, to sell and distribute McBride's health and beauty products to beauty salons in a designated territory. (Pl.'s Ex. 1, 4/19/06 Distributor Agreement.)

The April 19, 2006 Distributor Agreement is the focus of this lawsuit. It has an arbitration clause that reads as follows:

> <u>Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration conducted in Atlanta, Georgia</u> in accordance with the rules and regulations of the American Arbitration Association ("AAA"), and judgment upon any award rendered in such arbitration may be entered in any court having jurisdiction thereof. Either party requesting arbitration under this Agreement shall make a demand therefor on the other party by registered mail with a copy for the AAA. The arbitration shall take place in Atlanta, Georgia, at a time noticed by the AAA regardless of whether one of the parties fails or refuses to participate. Neither party shall be precluded from bringing an action in an appropriate Georgia court of competent jurisdiction for injunctive or other provisional relief as necessary or appropriate.

(Pl.'s Ex. 1, 4/19/06 Distributor Agreement, ¶ 27 (emphasis added).) The Agreement also has a governing law clause providing that:

> This Agreement has been entered into in the State of Georgia, County of DeKalb and all questions with respect to the construction of this Agreement and the rights and liabilities of the parties shall be governed by the laws of the State of Georgia. Venue of any court action brought to enforce or interpret this Agreement or the rights of the parties, shall be in the State or Superior Courts of DeKalb County, Georgia.

(*Id.* at ¶ 28.)

## B. Events Leading to Termination

On December 21, 2005, McBride's general manager sent Plaintiff a letter notifying him that, because he had not met his sales quotas for the past three years, his distributor contract was being terminated effective December 31, 2005. (Pl.'s Ex. 8.) McBride apparently decided not to terminate Plaintiff's Distributor Agreement. On January 6, 2006, it sent Plaintiff another letter stating that it was putting his distributorship "on a 60 days probationary period effective January 1, 2006 thru March 3, 3006" for the same conduct described in the December 21, 2005 letter. (Pl.'s Ex. 4.) The letter set out the conditions Plaintiff was to satisfy while on probation. (*Id.*)

On April 19, 2006, McBride's general manager notified Plaintiff that, "[a]s you have met the conditions of your probation, McBride Research Laboratories has reinstated you as a Design Essentials distributor." (Pl.'s Ex. 5.) Plaintiff was further advised that he was still required to meet his yearly quota for 2006 of $135,000. A Distributor Agreement dated April 19, 2006, was enclosed for Plaintiff's signature. (Pl.'s Ex. 1.) Plaintiff signed the April 2006 Distributor Agreement and returned it to McBride, along with an objection to the sales quota set by McBride in that Agreement. (Pl.'s Ex. 10, Prude Aff. ¶ 24.) Plaintiff never received a signed copy of the April 2006 Distributor Agreement from McBride, but they continued to sell him products and to extend him credit throughout 2006. (*Id.* at ¶ 25.) During 2006, Plaintiff was treated differently than other McBride distributors. For example, he had no communication or support from McBride's area manager. (*Id.* at ¶ 26.)

At the beginning of 2007, McBride continued to sell Plaintiff products and continued to extend him credit. From January 27 through January 29, 2007, Plaintiff attended the annual meeting of McBride distributors held at the Atlanta Airport Marriott. (*Id.* at ¶¶ 27-28.)

At that 2007 annual meeting, Plaintiff received a Distributor Agreement dated January 29, 2007 for the year 2007. His annual sales quota for 2007 was reduced to $116,558.16. Plaintiff signed the Agreement and returned it to McBride. (*Id.* at ¶¶ 29-30.)

On February 23, 2007, McBride sent Plaintiff a letter notifying him that the 2007 Distributor Agreement was provided to him in error and that the Distributor Agreement that he signed in April 2006 was still valid until April of 2007. Plaintiff was further notified that, after April of 2007, McBride would review his distributorship "to see if the conditions of probation have been met as stated in the letter sent to you on January 6, 2006." (Pl.'s Ex. 9.) This last statement was inconsistent with McBride's April 19, 2006 letter. (Pl.'s Ex. 4, 4/19/06 letter.)

Plaintiff avers that the next letter he received from McBride was dated April 19, 2007. (Prude Aff. ¶ 34.) That letter notified Plaintiff that, after reviewing his account, McBride had decided not to renew his Distributor Agreement for 2007, that he would be contacted to make arrangements to pick up remaining McBride products in his inventory, and that he should submit any remaining balance due immediately. (Ex. 6 to Pl.'s Compl.)

When Plaintiff received this letter, he had an inventory of approximately $30,000 of McBride products (based on his cost to purchase the items). (Prude Aff. ¶¶ 36-37.) Plaintiff further avers that McBride has authorized another individual to distribute McBride products to customers in his territory, causing confusion, lost sales, and impeding Plaintiff's ability to collect accounts receivables. (*Id.* at ¶¶ 39-41, 44.)

### C. Procedural History

On May 16, 2007, Plaintiff filed a complaint in a Georgia state court alleging that McBride improperly terminated his Distributor Agreement and seeking a temporary

4

restraining order or preliminary injunctive relief, a permanent injunction, damages and attorney fees. The complaint alleged that, although Plaintiff's Distributor Agreement contains an arbitration clause, that clause also provides for entry of a preliminary injunction to preserve the status quo pending outcome of the arbitration. (Def.'s Ex. 9, Pl.'s Ga. Compl. ¶ 6.) Accordingly, Plaintiff sought an order from the Georgia court enjoining McBride from allowing any other distributor to sell its products to customers located in Plaintiff's exclusive territory and requiring McBride to continue to sell its products to Plaintiff, pending the outcome of an arbitration proceeding. (*Id.* at ¶¶ 14, 19, 22, 25.) The Georgia court refused to grant an injunction, and Plaintiff voluntarily dismissed the action without prejudice. (Def.'s Ex. 10.)

On July 5, 2007, Plaintiff filed this action in Michigan state court seeking monetary damages instead of injunctive relief. Defendant McBride was served on July 19, 2007, and removed the action to this Court based on this Court's diversity jurisdiction on August 17, 2007. (Docket Entry No. 1.) Five days later, McBride filed the motion for summary judgment that is now before the Court.

**II. Summary Judgment Standard**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an

element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.  Analysis

The Court begins with McBride's argument that Plaintiff's claims fall within the broad scope of the Distributor Agreement's arbitration clause, thus requiring dismissal of his action here. Plaintiff raises several counter arguments. First, he argues that the arbitration clause in the Distributor Agreement is unenforceable because Michigan's Franchise Investment Law, Mich. Comp. Laws § 445.1527(f), renders void all contractual provisions which require that arbitration be conducted outside Michigan. (Resp. at 1.) Second, he argues that McBride waived the right to arbitrate when it filed this motion for summary judgment raising an alternative argument that substantively addressed Plaintiff's ability to establish his claims under the Michigan Franchise Investment Law. Finally, Plaintiff argues

that the arbitration clause is not broad enough to cover claims alleging violations of Michigan's Franchise Investment Law. The Court addresses each of these arguments in turn. It begins, however, with a discussion of the Federal Arbitration Act.

**A. Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, applies to commercial transactions governed by written agreements that provide for arbitration of disputes arising out of that transaction. *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984). Arbitration agreements are generally favored. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In fact, Congress enacted the FAA, in "response to the hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). *Accord*, *Stout v J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (observing that "[t]he FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and loss costly alternative to litigation."). The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, including statutory claims, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (addressing claims alleging a violation of the Sherman Antitrust Act).

Section 2 of the FAA compels judicial enforcement of arbitration clauses in commercial contracts unless legal or equitable grounds exist for revocation. *See* 9

7

U.S.C.A. § 2.[2] As the Sixth Circuit recently observed, "the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003) (internal quotations and citations omitted). Thus, "[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout*, 228 F.3d at 715. This is so because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations and citations omitted). Accordingly, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

If a court determines that the cause of action is covered by an arbitration clause, Section 3 of the FAA provides that "it must stay the proceedings until the arbitration

---

[2]9 U.S.C. § 2 provides in pertinent part that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . , shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

process is complete." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing 9 U.S.C. § 3). Courts have held, however, that when the court determines that all the claims in a cause of action are to be submitted to arbitration, it may dismiss, rather than stay the action because "staying the action will serve no purpose." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). *See Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, *4 (6th Cir. Oct. 19, 1999) (rejecting an argument that dismissal was improper, citing *Alford* with approval, and holding that dismissal is proper when all claims in a suit are submitted to arbitration).

**B. Application**

It is not disputed that the parties entered into an arbitration agreement when Plaintiff executed the April 19, 2006 Distributor Agreement. Likewise, it is not disputed that the agreement falls with coverage of the FAA. Rather, Plaintiff argues that he is not bound by the agreement to arbitrate because: (1) the arbitration agreement is unenforceable under § 445.1527(f) of Michigan's Franchise Investment Law; (2) McBride waived its right to compel arbitration; and (3) even if found to be enforceable, Plaintiff's statutory claims do not fall within the scope of the parties' arbitration agreement. This Court addresses the enforceability argument first.

**1. Enforceability of the Agreement to Arbitrate**

Plaintiff first argues that the parties' arbitration agreement is unenforceable because it requires that arbitration be conducted in Georgia and Section 27 of Michigan's Franchise Investment Law renders void and unenforceable arbitration clauses in a document "relating to a franchise" requiring that "arbitration . . . be conducted outside this state." Mich. Comp.

9

Laws § 445.1527(f).[3] Assuming, without deciding that Plaintiff can satisfy the prerequisites for coverage under Michigan's Franchise Investment Law, its first argument fails.

This Court acknowledges that before it "can send a case to arbitration, it must first determine that a valid agreement to arbitrate exists." *Fazio*, 340 F.3d at 393 (citing 9 U.S.C. § 2; *Stout*, 228 F.3d at 714). This "gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam*, 537 U.S. at 592.

Subsection 27(f) of Michigan's Franchise Investment Law was thoroughly discussed in *Flint Warm Air Supply Company v. York International Corporation*, 115 F. Supp.2d 820 (E.D. Mich. 2000). After reviewing relevant Supreme Court decisions examining statutory provisions similar to Michigan's, the *Flint Warm Air* court concluded that "Section 27(f) of the [Michigan Franchise Investment Law] is preempted under the FAA." *Id.* at 828. *Accord, Alphagraphics Franchising, Inc. v. Whaler Graphics, Inc.*, 840 F. Supp. 708 (D. Ariz. 1993). This Court agrees with the reasoning and conclusion in *Flint Warm Air* and likewise holds that Section 27(f) of Michigan's franchise Investment Law is preempted

---

[3]The full text is as follows:

> Sec. 27. Each of the following provisions is void and unenforceable if contained in any documents relating to a franchise:
>
> * * *
>
> (f) A provision requiring that arbitration or litigation be conducted outside this state. This shall not preclude the franchisee from entering into an agreement, at the time of arbitration, to conduct arbitration at a location outside this state.

Mich. Comp. Laws § 445.1527(f).

10

under the FAA.  Accordingly, even if the Distributor Agreement were found to be governed by that statute, Plaintiff is foreclosed from arguing that the arbitration clause in that Agreement is unenforceable.  The Court now addresses Plaintiff's waiver argument.

**2. Waiver**

Plaintiff argues that Defendant McBride has waived its right to compel him to arbitrate his claims because it filed a motion for summary judgment simultaneously arguing that (1) Plaintiff's claims are subject to arbitration and thus must be dismissed; and (2) inconsistent with that first argument, it substantively argued that Plaintiff could not show that the parties' commercial relationship falls within the scope of Michigan's Franchise Investment Law. This Court rejects this argument, finding McBride's actions are not inconsistent with an intent to assert its right to compel arbitration.

As the Sixth Circuit recently observed, in light of the strong presumption in favor of arbitration, "waiver of the right to arbitration is not to be lightly inferred." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355-56 (6th Cir. 2003) (internal quotations and citations omitted).  Nonetheless, "[a]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon.  Although a waiver of the right to arbitration is not to be lightly inferred, a party may waive the right by delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Id.* at 356 (internal quotes and citations omitted).

McBride sought arbitration at the first time pleadings were due, and, in the alternative simultaneously argued, on substantive grounds, that Plaintiff could not establish his claims under the Michigan Franchise Investment Law.  McBride's conduct does not indicate any intent to abandon arbitration, and thus it has not caused any prejudice to Plaintiff.  The

11

circumstances presented here are readily distinguishable from those where the Sixth Circuit has determined the right to arbitrate has been waived. *See O.J. Distrib., Inc.*, 340 F.3d at 359 (finding that the defendant had waived its right to arbitrate because "for more than a year Defendant acted completely inconsistent with any reliance upon the arbitration provision, and delay[ed] its assertion to such an extent that the opposing party [Plaintiff] incur[red] actual prejudice inasmuch as the 180-day period for resolving matters pursuant to the arbitration provision had long passed") (internal quotations and citations omitted); *General Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (finding that the defendant had waived the right to arbitrate because "for 17 months, [the defendant] remained idle while General Star incurred the costs associated with this action" and "sought arbitration only *after* the district court had entered a default judgment against it"); *WorldSource Coil Coating, Inc. v. McGraw Constr. Co.*, 946 F.2d 473, 476 n. 3, 477 (6th Cir. 1991) (finding that the defendant had waived its right to compel arbitration because it had "submitted arbitrable issues to the state court" and "did not seek arbitration . . . until after its state court action was dismissed").

The Seventh Circuit, like the Sixth, observes that with waiver issues "no rigid rule exists" and "[t]he essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate." *St. Mary's Med. Center of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 587-88 (7th Cir. 1992). In *St. Mary's Med. Center*, the Seventh Circuit held that the defendant had acted inconsistently with an intent to assert its right to arbitrate and thus had waived that right when it participated in the litigation for many months, took part in discovery, and only mentioned arbitration after losing its motion to dismiss or, alternatively, for summary

12

judgment. *Id.* at 589-91. The circumstances here differ greatly from those presented in *St. Mary's Med. Center*. Accordingly, McBride has not waived its right to compel arbitration. The Court now considers Plaintiff's argument that the arbitration clause is not broad enough to encompass the claims asserted in his complaint.

### 3. Scope of the Arbitration Agreement

As the Supreme Court recently observed, "[t]he question whether the parties have submitted a particular dispute to arbitration; *i.e.*, the '*question of arbitrability*,' is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (internal quotations and citations omitted). It is undisputed that the Court has the authority to determine the question of arbitrability, and it does so now.

The arbitration clause at issue here broadly asserts that "[a]ny controversy or claim arising out of or relating to this [Distributor] Agreement shall be settled by arbitration conducted in Atlanta, Georgia in accordance with the rules and regulations of the American Arbitration Association ("AAA")." (Pl.'s Ex. 1, 4/19/06 Distributor Agreement, ¶ 27.) Despite Plaintiff's arguments to the contrary, the claims asserted in his complaint alleging violations of Michigan's Franchise Investment Law arise out of and relate to his Distributor Agreement. *See Flint Warm Air*, 115 F. Supp.2d at 828 n.4 (similarly concluding that "[t]o the extent that Plaintiff wishes to pursue its construction of the Sales Distributor Agreement as consisting a 'franchise,' this is a matter for the arbitrators to decide as it is clearly a 'claim [] arising out of or relating to' the Distributor Sales Agreement.").

### C. Dismissal Without Prejudice vs. Stay Pending Arbitration

Section 3 of the FAA, 9 U.S.C. § 3, mandates courts to stay proceedings pending completion of arbitration. Federal Courts of Appeal, including the Sixth Circuit, however, have authorized dismissal where all claims in an action are to be submitted to arbitration and where staying the action and retaining jurisdiction would serve no purpose. *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, *4 (6th Cir. Oct. 19, 1999) (citing with approval the holding in *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), and *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988), that dismissal is proper under these circumstances). Because all claims in this action are to be submitted to arbitration and staying the action and retaining jurisdiction would serve no purpose, this Court grants Defendant McBride's request that this action be dismissed but does so without prejudice.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART, and the claims asserted in Plaintiff's complaint are DISMISSED WITHOUT PREJUDICE.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: February 8, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 8, 2008, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager